UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIA A.,
    *Plaintiff*,

v.       No. 3:22-cv-00393 (JAM)

COMMISSIONER OF SOCIAL SECURITY,
    *Defendant*.

## ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND GRANTING MOTION TO AFFIRM THE DECISION OF THE ACTING COMMISSIONER OF SOCIAL SECURITY

Plaintiff claims that she is disabled and unable to work owing to several physical and mental impairments.[1] She brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Acting Commissioner of Social Security, who denied her claims.[2] Plaintiff has moved to reverse, and the Acting Commissioner has moved to affirm the decision.[3] For the reasons discussed below, I will deny Plaintiff's motion to reverse and grant the Acting Commissioner's motion to affirm.

### BACKGROUND

The following facts are taken from transcripts provided by the Acting Commissioner.[4] In April 2018, Plaintiff filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income.[5] Her alleged disability began March 1,

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference Plaintiff solely by first name and last initial. *See* Standing Order – Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Doc. #1; Doc. #22.
[3] Doc. #22; Doc. #28. Pursuant to Fed. R. Civ. P. 25(d), the Clerk of Court is respectfully requested to substitute the Acting Commissioner of Social Security Kilolo Kijakazi as the defendant in place of the Commissioner of Social Security who was initially named as the defendant.
[4] *See* Doc. #9. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. *X*).
[5] *Id.* at 21 (Tr. 16).

1

2013.[6] The Social Security Administration (SSA) initially denied Plaintiff's claims in June 2018, and again upon reconsideration in August 2018.[7] She then filed a written request for a hearing.[8]

Plaintiff appeared with counsel and testified before an ALJ in an April 2019 hearing.[9] A vocational expert also testified.[10] In May 2019, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.[11] The SSA Appeals Council denied Plaintiff's request for review in June 2020.[12] Plaintiff then filed this federal court action in March 2022.[13]

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)).[14] The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

---

[6] *Id.* at 21, 71 (Tr. 16, 66).
[7] *Id.* at 21, 215, 239 (Tr. 16, 210, 234).
[8] *Id.* at 21, 256–57 (Tr. 16, 251–52).
[9] *Id.* at 21, 71 (Tr. 16, 66).
[10] *Ibid.*
[11] *Id.* at 33 (Tr. 28).
[12] *Id.* at 6 (Tr. 1).
[13] Doc. #1. It appears that the federal court complaint was not timely filed but the Commissioner made clear during the course of oral argument on the cross-motions that the Commissioner was waiving any timeliness claim.
[14] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts to the Commissioner at Step Five to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2013, the alleged onset date.[15] At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: urinary incontinence and diverticulitis, as well as additional medically determinable non-severe impairments.[16] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[17] The ALJ then found that Plaintiff had a residual functional capacity (RFC) to perform medium work defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that she must have ready access to a restroom.[18] At Step Four, the ALJ determined that Plaintiff was able to perform past relevant work as a Case Aide, Case Worker, Receptionist, and Resident Care Aide, none of

---

[15] Doc. #9 at 24 (Tr. 19).
[16] *Id.* at 24–26 (Tr. 19–21).
[17] *Id.* at 27 (Tr. 22).
[18] *Ibid.*

3

which were precluded by Plaintiff's RFC.[19] The ALJ therefore held that Plaintiff was not disabled within the meaning of the Social Security Act.[20]

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Plaintiff argues that her impairments qualify her for Social Security benefits. She appears to argue that the ALJ disregarded several of her alleged impairments or discounted their severity.[21] But, for the reasons set forth by the Commissioner's motion, there is substantial evidence to support the ALJ's determination that only two of Plaintiff's alleged impairments—urinary incontinence and diverticulitis—were severe, and the rest were either non-severe or not impairments at all.[22]

Plaintiff asserts that her left hand is "deformed and completely dislocated" due to an injury occurring in July 2020.[23] But the ALJ issued his decision in May 2019.[24] The Court

---

[19] *Id.* at 32 (Tr. 27).
[20] *Id.* at 33 (Tr. 28).
[21] Doc. #22-1 at 4–6.
[22] *See* Doc. #9 at 24–26 (Tr. 19–21).
[23] Doc. #22-1 at 4.
[24] Doc. #9 at 33 (Tr. 28).

4

"may … order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Because the new evidence submitted by Plaintiff did not exist at the time of the ALJ's hearing, there is no question that the evidence is "new" and that "good cause" existed for her failure to submit this evidence to the ALJ. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). But the evidence is not material. "New evidence is 'material' if it is both (1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative," *Ibid.* The July 2020 injury to Plaintiff's left hand falls entirely outside of the time period of the ALJ's decision—March 1, 2013 to May 21, 2019—rendering evidence of the injury immaterial. *See, e.g.*, *Skoric v. Saul*, 821 F. App'x 62, 63 (2d Cir. 2020); *Solis v. Berryhill*, 692 F. App'x 46, 49 (2d Cir. 2017).

      Relatedly, Plaintiff has submitted an exhibit of what appears to be a portion of her medical records.[25] Several of the documents already appear in the administrative record.[26] As to the rest, I will not consider the documents that postdate the ALJ's May 2019 decision for the same reason that I will not consider evidence of the July 2020 injury to Plaintiff's left hand.[27] And Plaintiff has not submitted an explanation that the remaining evidence is new, material, or that good cause existed for her failure to submit the evidence to the SSA.[28] I therefore will not consider these documents either. *See* 42 U.S.C. § 405(g).

---

[25] Doc. #23-1.
[26] *See id.* at 5–6 (compare to Doc. #9 at 843–44 (Tr. 838–39)), 13 (compare to Doc. #9 at 1276 (Tr. 1271)), 14 (compare to Doc. #9 at 730 (Tr. 725)), 15 (compare to Doc. #9 at 751 (Tr. 746)).
[27] *See* Doc. #23-1 at 1–4, 12, 18 (post-May 2019 documents).
[28] *See id.* at 7–11, 16–17 (remaining documents).

Plaintiff provides more detail on her flat feet (pes planus). She asserts that she experiences "foot pain and lower back pain" if she walks "for longer than half hour or walking distance of [a] mile," and that she received cortisone shots for treatment, which she stopped taking "due to shooting the pain to my knee" [sic].[29] But "a court must uphold the ALJ's rejection of a claimant's subjective complaints of pain if the ALJ's findings are supported by substantial evidence," *Rutkowski v. Astrue*, 368 F. App'x 226, 230 (2d Cir. 2010), and substantial evidence supports the ALJ's determination that Plaintiff's flat feet were a non-severe impairment. First, although some evidence shows that Plaintiff's flat feet cause her pain,[30] other medical records—including those noting her flat feet—indicate that Plaintiff denied experiencing muscle, back, or joint pain.[31] Second, most medical providers evaluated her gait as normal, steady, or stable.[32] In any event, Plaintiff does not show how her flat feet qualify as a severe impairment under the regulatory criteria, which define "not severe" impairments as those that "do[] not significantly limit your physical or mental ability to do basic work activities." 40 C.F.R. §§ 404.1522(a), 416.922(a).

Plaintiff also brings up her "[d]isc [d]egenerative back disease," which allegedly requires her to use a "cane or walking stick when injuries are agitated from walking and movement more than [a] half hour of walking or movement [sic]."[33] As with her flat feet, however, Plaintiff does not explain how her back disease qualifies as a severe impairment under the regulatory criteria. Indeed, she does not explain how it qualifies as a medically determinable impairment at all,

---

[29] Doc. #22-1 at 5.
[30] Doc. #9 at 54, 733 (Tr. 49, 728).
[31] *Id.* at 704, 784–85, 813, 817 (Tr. 699, 779–80, 808, 812); *see also id.* at 593 (Tr. 588) ("steady gait and no complaints of pain").
[32] *Compare id.* at 55, 813, 1343 (Tr. 50, 808, 1338) (gait improper), *with id.* at 127–28, 578, 770, 818, 825, 831, 836–37, 986, 998, 1001, 1020, 1047, 1063, 1108, 1253, 1258, 1260, 1269 (Tr. 122–23, 573, 765, 813, 820, 826, 831–32, 981, 993, 996, 1015, 1042, 1058, 1103, 1248, 1253, 1255, 1264) (gait normal).
[33] Doc. #22-1 at 5.

6

given that impairments "must be established by objective medical evidence from an acceptable medical source." *Id.* §§ 404.1521, 416.921. Because the record contains no medical evidence of degenerative disc disease, the ALJ did not err by not considering it.

Plaintiff's description of her eczema appears to concern her current symptoms after the ALJ rendered his decision, rendering them immaterial for purposes of my review. *See Skoric*, 821 F. App'x at 63; *see also* Doc. #22-1 at 5–6 ("I have had eczema all my life, however *now* I have eczema patch on my right leg that is gross to look at, itchiness is agitating, always scabby, daily irritation to skin, irritation is painful to touch and scratch, bleeding occurs upon scratching." (emphasis added)). Moreover, several medical examinations revealed no rashes or other abnormalities with Plaintiff's skin.[34] And Plaintiff reported a recent face rash in March and June 2018, attributed to "soaps she was using," but her symptoms improved since she stopped using the soap.[35] So even if Plaintiff's allegations concerned symptoms preceding the ALJ's decision, the ALJ did not err by not considering her eczema.

Plaintiff further asserts that she suffers from "nervous system [sic], poor coordination, confusion" resulting from "a traumatic brain injury" (repeated head injuries, allegedly occurring most recently in 2009).[36] Plaintiff also asserts that she suffers from PTSD, symptoms of which include flashbacks, severe anxiety, insomnia, and suicidal ideations.[37] But Plaintiff does not explain how the ALJ's decision—that her mental disorders were not severe impairments—was unsupported by substantial evidence. The ALJ pointed to multiple inconsistencies regarding the purported severity of Plaintiff's symptoms, including several examinations finding Plaintiff to be

---

[34] *See, e.g.*, Doc. #9 at 548, 597, 603, 608, 682, 704–05, 770, 825, 838, 844, 931, 960, 998, 1018, 1063, 1105, 1221, 1260, 1316, 1329 (Tr. 543, 592, 598, 603, 677, 699–700, 765, 820, 833, 839, 926, 955, 993, 1013, 1058, 1100, 1216, 1255, 1311, 1324).
[35] *Id.* at 779, 1000 (Tr. 774, 995).
[36] Doc. #22-1 at 6.
[37] *Ibid.*

7

mentally normal.[38] The ALJ also noted Plaintiff's work in 2018 as an Uber driver[39] and Plaintiff's testimony about her ability to independently manage her daily life.[40] In addition, the ALJ observed an inconsistency between Plaintiff's claimed memory problems and her detailed testimony about her past relevant work as well as her failure to seek consistent mental health treatment.[41]

To qualify as severe, mental disorders generally must satisfy what is known as "paragraph B criteria." *See* 20 C.F.R. § 404, subpt. P, app. 1, §§ 12.00(A), 12.00(F). Paragraph B describes four areas of mental functioning: the abilities to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 12.00(E). The ALJ rates each of the four areas on a five-point scale: no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. *Id.* § 12.00(F)(2). Satisfying paragraph B requires the disorder to result in "extreme" limitation of one, or "marked" limitation of two, of the four areas. *Ibid.*

On the basis of the medical record and testimony at the hearing, the ALJ determined that Plaintiff's mental impairments caused no more than "mild" limitation in any of the four areas.[42] Given the ALJ's thorough review of the above evidence regarding Plaintiff's alleged mental disorders, it cannot be said that his conclusion was unsupported by substantial evidence.

The ALJ did not address whether Plaintiff's mental conditions qualify as neurological disorders (*id.* § 11.00) rather than mental disorders (*id.* § 12.00). Plaintiff's discussion of the neurological disorders section of the regulations may be taken to argue that the ALJ should have

---

[38] Doc. #9 at 25–26 (Tr. 20-21) (citing, *inter alia*, *id.* at 548, 562, 570, 572, 579, 600, 602, 604, 674, 698, 940, 989, 1136, 1351 (Tr. 543, 557, 565, 567, 574, 595, 597, 599, 669, 693, 935, 984, 1131, 1346)).
[39] *Id.* at 26 (Tr. 21); *see id.* at 75–76 (Tr. 70–71).
[40] *Id.* at 26 (Tr. 21); *see, e.g.*, *id.* at 93–96 (Tr. 88–91).
[41] *Id.* at 25–26 (Tr. 20–21).
[42] Doc. #9 at 26 (Tr. 21).

evaluated Plaintiff's traumatic brain injury and PTSD as neurological disorders.[43] But the Social Security regulations classify the above disorders as mental disorders, so the ALJ did not err in this respect. *See id.* §§ 12.00(B)(1)(b) (traumatic brain injury), 12.00(B)(11)(b) (PTSD). Plaintiff does not discuss the other impairments that the ALJ analyzed—substance addiction disorder, anxiety disorder, depressive disorder, and bipolar disorder—but these, too, are classified as mental disorders, or, in the case of substance addiction disorder, are not recognized as a standalone impairment. *See id.* §§ 12.00(B)(3) (depression and bipolarity), 12.00(B)(5) (anxiety disorder). In short, the ALJ applied the correct evaluative framework to Plaintiff's alleged mental disorders.

Plaintiff does not appear to challenge either in her complaint or her motion to reverse the ALJ's determination that none of her impairments satisfied the listed requirements, the ALJ's determination of her RFC, or the ALJ's determination of her capability to perform past relevant work. Issues not sufficiently raised in the briefs are forfeited. *See Rock v. Colvin*, 628 F. App'x 1, 3 n.2 (2d Cir. 2015); *Daniels v. Berryhill*, 2017 WL 2798500, at *4 (D. Conn. 2017) (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)). Plaintiff has thus forfeited these arguments.

Plaintiff alleges in her complaint that she is "being discriminated against due to age & education."[44] But Plaintiff does not specify who discriminated against her, what actions they took, when the actions occurred, or what cause or causes of action she asserts. The discrimination allegations are too vague to be credited at this time. And to the extent Plaintiff brings a freestanding discrimination claim against the Commissioner, she does not allege facts to support it other than the denial of her claim, and this type of claim is outside the scope of a

---

[43] Doc. #22-1 at 6.
[44] Doc. #1 at 2.

9

review proceeding pursuant to 42 U.S.C. § 405(g). *See Fox v. Colvin*, 589 F. App'x 35, 36 (2d Cir. 2015) ("Pursuant to 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner applied the correct legal standard and whether substantial evidence supported its conclusions.").

Plaintiff's complaint alleges that there was an adverse decision by the Commissioner on February 25, 2022.[45] Because the record does not contain any evidence of this decision, I am unable to review it. The Commissioner advised at oral argument that the Commissioner is not aware of any final and reviewable decision being entered against the Plaintiff in 2022. In the event that Plaintiff wishes to file a copy of any 2022 decision and to file a motion for reconsideration of this ruling, she may do so within 30 days. Plaintiff should ensure that she has fully exhausted the administrative review process before seeking relief in this Court.

In the event that Plaintiff files a new review action, she may file a motion to appoint counsel. Any such motion should demonstrate what efforts she has made to date to retain qualified counsel.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to reverse (Doc. #22) and GRANTS the Acting Commissioner's motion to affirm (Doc. #28). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 12th day of December 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[45] Doc. #1 at 2.